IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-393-D

| | | |
|---|---|---|
| ROBERT RAY MOOREFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM &** |
| CAROLYN W. COLVIN, | ) | **RECOMMENDATION** |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE #18 & 20] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Robert Ray Moorefield ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #18] be granted, Defendant's Motion for Judgment on the Pleadings [DE #20] be denied, and this case be remanded to the Commissioner for further proceedings.

## STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on February 12, 2008, alleging disability beginning October 6, 2007.[1] (Tr. 174, 175.)[2] The

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are

applications were denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 51-54.) On February 10, 2010, a hearing was held before Administrative Law Judge Richard Perlowski (the "ALJ"), who issued a ruling denying Plaintiff's applications on March 19, 2010. (Tr. 55-65, 508-38.)

Subsequently, the Appeals Council granted Plaintiff's request for review. (Tr. 66.) On July 27, 2011, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for resolution of certain issues. (Tr. 66-68.) Specifically, the Appeals Council stated that the ALJ's reliance on the findings of the Disability Determination Services ("DDS") consultants to find that Plaintiff is able to perform a reduced range of light work (avoiding frequent postural activities and exposures to hazards) is misplaced because the consultants' residual functional capacity findings established that Plaintiff is limited to walking/standing only 2 hours in an 8-hour day, more closely approximating sedentary work. (Tr. 67, 215-222, 234-241.) The Appeals Council further stated that the ALJ's findings that Plaintiff's complaints of pain are not credible or supported by the objective medical evidence was improper because the ALJ did not address whether Plaintiff has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged and did not adequately discuss the factors required by Social Security Ruling ("SSR") 96-7. The Appeals Council directed that the ALJ, on remand: evaluate Plaintiff's subjective complaints and provide rationale in accordance with the disability regulations pertaining to the evaluation of symptoms and SSR 96-7p; give further consideration to Plaintiff's maximum residual functional capacity ("RFC") and

---

in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[2] Page citations are to the transcript of the administrative record.

provide rationale with specific references to the evidence; and obtain supplemental evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base. (Tr. 68.)

On April 6, 2012, a second hearing was held before the ALJ, at which Plaintiff was represented by counsel and Julie Sawyer-Little, a VE, appeared and testified. (Tr. 487-507.) On June 1, 2012, the ALJ issued a ruling denying Plaintiff's applications. (Tr. 10-23.) On April 2, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I.     Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in

conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.       Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. § 404.1520a(e)(3).

4

### III.    ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. (Tr. 23.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since November 6, 2007. (Tr. 15.)  Next, the ALJ determined Plaintiff had the following severe impairments: "status post hip replacement, status post rotator cuff repair, degenerative disc disease and hypertension." (Tr. 15.) Applying the technique prescribed by the regulations, the ALJ found Plaintiff's medically determinable mental impairments of anxiety and depression do not cause more than minimal limitation in the Plaintiff's ability to perform basic mental work activities and are therefore non-severe. (Tr. 16.) At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, and found that Plaintiff had the ability to perform "sedentary work . . . with sitting for 6 hours in a typical 8-hour day, walking and standing for 2 hours in a typical 8-hour day, and lifting and carrying no more than 10 pounds with normal breaks. . . . he should avoid frequent postural activities and exposure to hazards." (Tr. 17.) In making this assessment, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms not fully credible. (Tr. 18.) At step four, the ALJ concluded Plaintiff was not capable of performing the requirements of his past relevant work. (Tr. 21, 22.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of adjusting to the demands of other employment

5

opportunities that exist in significant numbers in the national economy. (Tr. 22, 23.) Specifically, the ALJ found that Plaintiff could perform the requirements of sedentary representative occupations such as order clerk, change account clerk, food checker, and food clerk. (Tr. 22, 23.)

## IV.    Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on four grounds. Plaintiff asserts that the ALJ erred by finding that Plaintiff is capable of doing sedentary work despite his need for a cane.  Second, Plaintiff argues that the ALJ erred when eliciting testimony from the VE by failing to convey the effect of Plaintiff's pain (specifically, his ability to concentrate) on his ability to work.  Third, Plaintiff contends that the ALJ erred by failing to give controlling weight to the medical opinion of Dr. Clifford R. Wheeless, Plaintiff's treating orthopedist.  Fourth, Plaintiff asserts that the ALJ erred in discounting Plaintiff's credibility upon finding that the record did not support his testimony that he had been issued a cane.

### A.    Residual Functional Capacity

Plaintiff contends that the ALJ erred in finding that Plaintiff is capable of performing sedentary work (with the aforementioned limitations) given the unrebutted evidence that Plaintiff needs a cane. (Brief Supp. Pl.'s Mot. J. Pleadings [DE #19] ("Pl.'s Mem.") at 12.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting,[3] a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally[4] and other

---

[3] "Sitting" generally totals about six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3.
[4] Occasionally" generally totals no more than about two hours of an eight-hour workday.

sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

Plaintiff's orthopedist, Dr. Wheeless, prescribed Plaintiff a cane on August 29, 2011. (Tr. 348.) In a letter dated July 2, 2012, Dr. Wheeless opined that the cane was medically necessary for Plaintiff to stand and walk. (Tr. 486.) At the hearing on April 6, 2012, the VE testified that a person requiring a cane to stand could not perform the sedentary jobs identified. (Tr. 503-504.) When the ALJ asked the VE if every person needing a cane for walking and standing is unemployable, the VE answered "no" but specified that sedentary work would be precluded "[i]f the individual, while . . . standing, has to hold the cane in one . . . hand[] and lean on the cane." (Tr. 504.)

"The requirement to use a hand-held assistive device may . . . impact . . . [an] individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00J4. Thus, an ALJ is required to consider the impact of "medically required" hand-held assistive devices. *Eason v. Astrue*, No. 2:07-CV-30-FL, 2008 WL 4108084, at *16 (E.D.N.C. Aug. 29, 2008); SSR 96-9, 1996 WL 374185, at *7 (July 2, 1996). A hand-held assistive device is "medically required" if "medical documentation establish[es] the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7. Whether the need for a hand-held assistive device impacts functional capacity depends upon the particular circumstances of the case. For example, an individual who requires a hand-held assistive device in one hand for purposes of walking may be able to use the other hand to perform requirements of many occupations. *Id*. "On the other

7

hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities . . . may be significantly eroded." *Id.*

In this case, the ALJ's RFC finding is not supported by substantial evidence. The medical evidence of record establishes that Plaintiff was prescribed a cane by Dr. Wheeless on August 29, 2011. (Tr. 348, 495). In a letter dated July 2, 2012, Dr. Wheeless explained that the cane was medically necessary for Plaintiff to stand and walk due to his multiple, severe orthopedic problems. (Tr. 486). Thus, Plaintiff has demonstrated that his use of a cane is "medically required." SSR 96-9p, 1996 WL 374185, at *7. In addition, the VE testified that a person requiring a cane to stand could not perform the sedentary jobs identified. (Tr. 503-504.) The ALJ inquired about the cane when Plaintiff appeared at the hearing on April 6, 2012, using a cane to ambulate. (Tr. 495.) The Plaintiff explained that he was prescribed the cane after he "fell a few times." (Tr. 495.) Even so, the ALJ did not inquire any further about the cane at the hearing, and therefore, failed to ascertain whether, and to what extent, Plaintiff's need for a cane impacts his functional capacity. (Tr. 495); *Eason*, 2008 WL 4108084, at *16 (E.D.N.C. Aug. 29, 2008); SSR 96-9, 1996 WL 374185, at *7 (July 2, 1996).

In his decision, the ALJ's only mention of Plaintiff's cane is the following incorrect statement: "[Plaintiff] states that he was issued a cane 2 months ago although *this is not in the record*." (*See* Tr. 18 (emphasis added).) The ALJ, therefore, failed to consider any limitations caused by Plaintiff's need for a cane in making his RFC determination. The ALJ's misperception also seems to have falsely persuaded him that Plaintiff was lying about having been prescribed a cane. Additionally, the fact that Plaintiff testified that he was prescribed the cane after falling a "few times" should have alerted the ALJ to the need to address the cane issue in some manner. (Tr. 495.)

Based on the record, the ALJ's RFC determination is not supported by substantial evidence with respect to Plaintiff's use of a cane. The ALJ found that Plaintiff could perform sedentary work, which by definition requires lifting up to ten pounds, and although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). Plaintiff's use of a cane could affect his ability to perform such sedentary work, even with the additional limitations that Plaintiff "should avoid frequent postural activities and exposure to hazards." *See*, e.g., *Love v. Commissioner of Social Sec.*, 605 F.Supp.2d 893, 907 (W.D.Mich. 2009) (finding that the ALJ's RFC determination was not supported by substantial evidence where the ALJ failed to address the illogical conclusion that a person can carry twenty pounds while using an assistive device; "[t]he Court does not doubt that Plaintiff can lift 20 pounds, but fails to comprehend how Plaintiff can carry 20 pounds if he requires a 'hand-held assistive device' to ambulate"). Because the ALJ failed to address the medical opinion of Dr. Wheeless as it impacts Plaintiff's ability to work while using his cane, this matter should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should fully consider what, if any, impact Plaintiff's need for a cane has on his ability to work.

### B. Vocational Expert

Plaintiff next argues that the ALJ erred when eliciting testimony from the VE by failing to convey the effect of Plaintiff's pain (specifically, his ability to concentrate) on his ability to work. (Pl.'s Mem. 12-13.) An ALJ may meet his burden under step five of the evaluation process by calling a VE to testify concerning relevant hypotheticals. 20 C.F.R. § 404.1566. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a

9

consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted).

In this case, the ALJ considered all of the evidence in the record, including Plaintiff's testimony, and the hypothetical questions posed by the ALJ reasonably incorporated all of the disabilities recognized by the ALJ. (Tr. 15-23.) When considering Plaintiff's subjective complaints of pain, the ALJ stated that Plaintiff has "reported residual pain [post-operatively] associated with arthritis but the overall evidence shows his pain has been maintained fairly well with medication and is stable." (Tr. 20.) The ALJ further stated that "[t]he evidence shows that the claimant's pain is controlled fairly well with medication and he has not reported any significant side effects to his doctors." (Tr. 21.) Although the ALJ noted Plaintiff's "chronic pain" as the reason for further reducing Plaintiff's range of sedentary work to avoiding frequent postural activities and exposure to hazards, these limitations were clearly incorporated into the hypothetical questions posed by the ALJ. (Tr. 503.) At the hearing, the ALJ asked the VE to "first assume this individual's limited to forms of sedentary work as that term's defined in the regulations; only *this individual would need to avoid any frequent postural activities, like stooping or crouching; would also need to avoid hazards* such as working around dangerous moving machinery or the like." (Tr. 503 (emphasis added).) Thus, the limiting effects of Plaintiff's pain were clearly conveyed to the VE, and the VE relied upon these limitations in providing his testimony. (Tr. 503.)

As for Plaintiff's argument that the ALJ should have specifically questioned the VE concerning Plaintiff's alleged inability to *concentrate* due to his pain, the ALJ was not required to do so because he neither found Plaintiff's ability to concentrate to be affected by his pain nor

10

did he assign any limiting effects stemming from Plaintiff's medications. (Tr. 17-23.) The ALJ explained that Plaintiff's pain was controlled fairly well and that Plaintiff failed to report any significant side effects of his medications to his physicians. (Tr. 20, 21.) Accordingly, the ALJ posed appropriate hypothetical questions accounting for Plaintiff's functional limitations based on evidence consistent with the medical record.

### C.    Treating Physician's Opinion

Plaintiff asserts that the ALJ erred by not giving controlling weight to the medical opinion of Dr. Wheeless, Plaintiff's treating orthopedist. (Pl.'s Mem.at 6-12.) Plaintiff concludes that had the ALJ fully credited Dr. Wheeless' opinion, Plaintiff would have been found disabled.[5] (Pl.'s Mem. at 7.)

On February 1, 2010, Dr. Wheeless wrote a letter stating that Plaintiff's medical history included left hip replacement due to avascular necrosis with associated arthritis, bilateral knee osteoarthritis, and right elbow osteoarthritis. (Tr. 286.) Dr. Wheeless opined that, even though Plaintiff's left hip replacement surgery went well, Plaintiff was unable to sit, stand, or walk more than thirty minutes at a time, or stand and walk longer than two hours in an eight-hour day. (Tr. 286.) Dr. Wheeless further explained that Plaintiff needs to alternate sitting, standing, walking, and reclining throughout the day; that he should avoid lifting over ten pounds; that he should avoid climbing, pushing, pulling, or stooping; and that he should avoid reaching or performing repetitive movement with the right upper extremity. (Tr. 286.)

---

[5] In both the February 1, 2010, Letter and the March 14, 2012, medical source statement, Dr. Wheeless concluded that Plaintiff was not able to work. However, Plaintiff concedes that the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner. *See Parker,* 792 F. Supp. 2d at 894 (citing 20 C.F.R. § 404.1527(e)(1)); (Pl.'s Mem. at 7.)

On March 14, 2012, Dr. Wheeless signed a medical source statement stating that Plaintiff had cervical spine degenerative disc disease, avascular necrosis of the humerus head in the right shoulder, and osteoarthritis of the knee. (Tr. 418.) Dr. Wheeless noted that Plaintiff could, therefore, lift only five pounds frequently. (Tr. 418.) Dr. Wheeless further explained that Plaintiff would need to alternate from sitting to standing to walking during an eight-hour workday. (Tr. 418.) In addition, Dr. Wheeless opined that Plaintiff could never use his right upper extremity for reaching, handling, and fingering activities during an eight-hour workday but could frequently use his left upper extremity for the same. (Tr. 419.) Dr. Wheeless stated that Plaintiff has the following limitations due to his impairments: no bending, kneeling, squatting, overhead reaching, stair-climbing, operating heavy machinery, running, or prolonged walking or standing. (Tr. 419.) Finally, Dr. Wheeless said he expected Plaintiff to be absent more than four days per month as a result of his impairments. (Tr. 419.)

In determining the appropriate weight to be accorded a physician's opinion as to the nature and severity of an impairment, the ALJ is guided by 20 C.F.R. § 404.1527. Generally, a treating physician's opinion should be accorded more weight than a non-treating physician's opinion, but the court is not required to give the testimony of a treating physician controlling weight in all circumstances. 20 C.F.R. § 404.1527(c); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id.* "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig v. Chater*, 76 F.3d 585, 590

(1996)) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." *Parker*, 792 F. Supp. 2d at 894 (citing 20 C.F.R. § 404.1527(e)(1)).

In this case, the ALJ gave Dr. Wheeless' medical opinions "partial weight," explaining:

> The undersigned finds that certain aspects of Dr. Wheeless [sic] opinions are in fact consistent with the residual functional capacity determined in this decision in that the claimant is unable to lift more than 10 pounds, engage in more than 2 hours of standing/walking and should avoid more than frequent postural restrictions. However, the undersigned does not find that the medical records and the claimant [sic] work activity show that the claimant is prevented from all work activity. The evidence shows that the claimant's pain is controlled fairly well with medication and he has not reported any significant side effects to his doctors. He also has had significant relief with steroid injections. He further reported being happy with the results of surgery and has done well, for the most part, postoperatively. Diagnostic testing and physical examinations are essentially within normal limits. His gait is normal on all exams although he reported being issued a cane right before the hearing. He also has full range of motion in his hip, knees and shoulder. He has normal strength in his upper extremity with intact sensation and reflexes. Therefore, the undersigned concludes that the claimant is

13

capable of performing a limited ranged of sedentary work with avoidance of frequent postural activities and exposure to hazards.

(Tr. 21.) Notably, the ALJ did not consider Dr. Wheeless' opinions regarding Plaintiff's need for a cane to walk or stand. Although he states that Plaintiff "reported being issued a cane right before the hearing," the ALJ incorrectly found that there was no record of such a prescription.

Because the ALJ failed to consider Dr. Wheeless' opinions with regard to the medical necessity of a cane, the undersigned is unable to say that the ALJ properly evaluated Dr. Wheeless' opinions. Accordingly, it is recommended that the matter be remanded to the Commissioner for further consideration.

### D. Plaintiff's Credibility

Plaintiff further asserts that the ALJ erred in assessing his credibility. Specifically, Plaintiff argues that the ALJ made a credibility determination adverse to Plaintiff because he "probably thought" that Plaintiff had lied at the hearing about having been issued a cane. (Pl.'s Mem. at 13.) In support of his argument, Plaintiff points to that portion of the ALJ's decision in which it is incorrectly[6] stated that the record does not reflect the issuance of a cane. Given the undersigned's recommendation that the case be remanded for further consideration of Plaintiff's RFC and Dr. Wheeless' opinions, there exists a substantial possibility that the Commissioner's credibility finding may be different on remand. Accordingly, the undersigned expresses no opinion whether the Commissioner erred in assessing Plaintiff's credibility.

### CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #18] be GRANTED, Defendant's Motion for Judgment on the

---

[6] The Commissioner does not dispute that Dr. Wheeless provided Plaintiff with a cane on August 29, 2011. (Tr. 347, 348.)

14

Pleadings [DE #20] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections.  Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 18th day of August 2014.

_____

KIMBERLY A. SWANK
United States Magistrate Judge